JAMES WRIGHT, PLAINTIFF IN ERROR, V. GREENWOOD WAREHOUSE CO., DEFENDANT IN ERROR.

1. **Practice**: OBJECTIONS TO TESTIMONY: GROUNDS OF OBJECTION SHOULD BE STATED. In order to make an objection to testimony available it is necessary that the grounds of the objection be stated; otherwise it is impossible for the reviewing court to know whether the court below was in fault or not.

2. ———: PRESUMPTION WHERE GROUND OF OBJECTION IS NOT STATED. And even where it is apparent that a valid objection to testimony could have been made, still the court is not at liberty to assume that this was the one relied on; in the absence of an affirmative showing to the contrary all presumptions are favorable to the court whose judgment is under review.

3. **Conversion of Goods**: DEMAND. In an action to recover damages for the conversion of goods, the only purpose of a demand is to establish the fact of conversion. Where a wrongful conversion is established by other testimony, a demand need not be shown.

4. ———: CONSIGNMENT OF GOODS: BILL OF LADING: ASSIGNMENT OF. F. & K. purchased a quantity of flaxseed under an arrangement with S. & E. that they would advance the necessary funds to pay for it, for shipment to W. & L., at Chicago, Ill. When F. & K. had purchased the seed, they applied to S. & E. for the money, which was refused; whereupon they shipped the seed in their own names to W. & L., drew upon the consignees for the money, and assigned both the bill of lading and draft to the Greenwood Warehouse Company in payment for money advanced to enable them to pay for the seed. In an action by the latter against W. & L. to recover damages for the conversion of the flaxseed—*Held*, that although the seed was purchased by F. & K. under said arrangement, still as it was their property they had the right to ship it to their own credit, and to impose such terms upon the consignees as they saw fit. It was also held that by said assignment of the bill of lading and draft the entire interest of F. & K. in the shipment passed to the Warehouse Company; and that the consignees having accepted the seed, and refused payment, were liable for its full market value.

ERROR to the district court for Lancaster county. It was an action against Wright and Lawther, brought by

the Greenwood Warehouse Company to recover the value of certain flax seed, alleged to have been converted by them. No service was had upon Lawther. The Company had judgment below, before POUND, J., and Wright, the defendant there, brought the cause here upon a petition in error.

*Mason & Whedon,* for plaintiff in error.

The court below found that Wright and Lawther received the flaxseed, but as no demand for the same was alleged or proved before suit commenced, the plaintiff cannot recover. *Powers v. Bassfield,* 19 How. Pr., 309. *Yeager v. Wallace,* 57 Penn. State, 365. *Stowe v. Livingston,* 6 Johnson, 44. *Carleton v. Lovejoy,* 54 Me., 445. *Hardy v. Keeler,* 56 Ill., 152. *Witherspoon v. Blewett,* 47 Miss., 570.

*Cobb & Marquett,* for defendant in error.

The flax by order of plaintiff was received and draft not paid, but sent back to bank. The defendant in error paid the bank and had bills of lading assigned to it; it then had the right to the flaxseed, and had an interest in the same to the amount of money paid on said flaxseed. *Stollenwreck v. Thatcher,* 115 Mass., 224–230. *Marine Bank of Chicago v. Wright,* 48 N. Y., 1. Wright & Laughter had no right to the flaxseed until they paid draft, or money, due on same. *Newcomb v. Boston & Lowell R. R. Co.,* 115 Mass., 230. *Seymore v. Newton,* 105 Mass., 272. *National Bank v. Merchant Bank,* 91 U. S., 92. The lien of defendant in error on the flaxseed for the money advanced can only be removed by payment of the money. *Heffman v. Bank,* 12 Wallace, 190. Wright, the plaintiff in error, having caused Wright & Laughter to convert said flaxseed to their use

without paying for it, became liable for the amount. 2 Hillard on Torts, 312. *Judson v. Cook*, 11 Barb., 642. Pomeroy on Remedies, 328, Sec. 281.

LAKE, J.

There is some conflict in the testimony, but nothing at all serious as to the controlling facts of the case. It is clear from the evidence that Farmer & Knowles purchased the flaxseed in question with the understanding that Smith & Eaton would advance the money to pay for it, for shipment to Wright & Lawther at Chicago, Illinois. However, after the seed had been purchased, and was ready for shipment, Farmer & Knowles went to Smith & Eaton for the money but could not get it. Thereupon they shipped the seed, and drew for the price directly upon Wright & Lawther, who accepted the consignment, but refused to honor the draft. Farmer & Knowles had the right to pursue this course, for, having purchased and paid for the flaxseed, it was their property until they relinquished their title to another. And as an incident of their ownership Farmer & Knowles had the undoubted right to impose just such terms upon Wright & Lawther, the consignees, as the condition upon which they could have the seed, as they saw fit. And the consignees were at full liberty to reject it, if those terms were not satisfactory to them. But having received and converted the seed to their own use, at the same time ignoring the terms imposed, they are liable in damages for its full value.

To enable Farmer & Knowles to purchase and pay for this flaxseed as it was being brought into market, the Greenwood Warehouse Company, the defendant in error, advanced to them the necessary funds, and as security for such advance took Farmer & Knowles' draft upon Wright & Lawther, together with an assignment of the

bill of lading for the seed. By this assignment the entire interest of the consignors in the shipment passed to the defendant in error.

There are several errors assigned, but we shall notice those only to which counsel have referred in their brief. The first point which seems to be relied on is that the finding and judgment is not supported by the evidence. This objection is not well taken. Although, as before observed, the testimony is somewhat conflicting, still we are of the opinion that it is ample to justify the conclusion reached by the learned judge who presided in the court below.

The second objection relates to the admission of " the bills of lading over the objections of the plaintiff in error." What these objections were we are not advised, the record on this subject only showing that when the bills of lading were offered in evidence, " Whedon objected," and " the court received the evidence subject to the objection and exception." We have frequently held that in order to make an objection to testimony available, it is necessary that the ground of the objection be stated. Where this is not done it is impossible for us to ascertain whether the court below was in fault or not. And even if it were apparent that a valid objection to the testimony in question could have been made, still we are not at liberty to assume that this was the one actually interposed. In the absence of an affirmative showing to the contrary, all presumptions are favorable to the court whose judgment is under review.

The third point is, that inasmuch as no demand for the flaxseed " was alleged, or proved, 'before suit commenced, the plaintiff cannot recover." Under the facts of this case no demand was necessary. The only purpose of a demand in an action of this kind is to show a conversion of the goods. Here the wrongful conversion of the flaxseed is clearly shown by other testimony,

especially by that of the witness Cobb, who called upon the defendant for the express purpose of obtaining a settlement of the matter. To this witness, who was acting for the defendant in error, they acknowledged the receipt of the seed, but refused to account for it on the alleged ground that "they did not know Farmer & Knowles and the Greenwood Company in that transaction," and had already paid John Eaton for it. And by the fourth point of plaintiff's brief our attention is called to Eaton's testimony, in which he states that Farmer & Knowles purchased the seed for him, and that he had sold and received his pay for it. As we have before remarked there is no doubt that there was an understanding when Farmer & Knowles made the purchase that Smith & Eaton would pay for it, and had they done so the shipment would doubtless have been made on their account, and the bills of lading delivered accordingly. But Farmer & Knowles were under no obligations to part with the control of their own property until they were paid for it. That they did not do so is established by the undisputed fact that they did not deliver the bills of lading to Smith & Eaton, nor to Eaton, but, as honest men, turned them over to the warehouse company, which had furnished the money by which they were enabled to make their purchases. A careful examination of the case leaves us in no doubt that by the judgment of the district court substantial justice has been done, and it must be affirmed.

JUDGMENT AFFIRMED.